(No. 22855.—

The People of the State of Illinois, Defendant in Error, *vs.* Harold Erlandson, Plaintiff in Error.

*Opinion filed April 17, 1935.*

HAROLD L. LEVY, and EDWARD M. KEATING, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of robbing Jennie Wilk of $230 while armed with a gun. The errors assigned resolve themselves into one contention: that plaintiff in error was not proved guilty beyond a reasonable doubt.

The complaining witness, her daughter Charlotte, and Nick Riato, her employee, testified that on several occasions prior to November 30, 1932, the date of the crime charged, plaintiff in error had been at the home of Jennie Wilk. On the last previous call he had left a gallon of alcohol. On the day of the alleged crime, about 11:00 o'clock in the morning, he and two other men entered the house. Jennie Wilk testified that she paid him eight dollars for the gallon of alcohol he had left on the previous call; that plaintiff in error and one of the other men with him had guns; that Nick Riato and her daughter Charlotte were taken into a bed-room by plaintiff in error and required to remain there while he searched the house. Jennie Wilk testified that while she was seated on a chair one of the men said she had something in her stocking; that plaintiff in error approached with a black-jack in his hand and said they were going to put her to sleep and grabbed her money, and, taking some silver dollars from a cabinet, the three men left, after one of them pulled the telephone box from the wall and broke the wires. She testified they said, "Don't try to follow us or call the police." Jennie Wilk's testimony was corroborated by that of her daughter Charlotte and Riato.

Police officers testified that plaintiff in error admitted to them that he took money from Jennie Wilk, but he said it was not robbery but that the money he got from her was money she owed him for alcohol he had previously delivered.

Plaintiff in error was the only witness in his own behalf. He testified that he sold alcohol to Jennie Wilk's husband, delivering it sometimes once and sometimes three times a week; that he delivered from four to forty cans at a time at nine dollars a can, and that Wilk owed him for eighty cans and had paid him $220, leaving a balance of $500. He testified that he took Nick Scalise and another fellow with him because they demanded money from him and he wanted to show them that the money was still outstanding. He stated that he asked Jennie Wilk if she was going to pay, and that she refused. He denied taking money from her forcibly, and testified that when she said she did not have the money, one of the men noticed a bulge in her stocking and wanted to take the money; that he sent the men outside and told her that these men had him on the spot and that he would have to pay them or they would probably kill him, and that she then agreed to give him the money and did so, and that as he was going out she said, "I will get you for this and get the money back." He denied that he forced anyone to go into the bed-room.

Plaintiff in error admits that he obtained $230 from Jennie Wilk. The question before the jury was whether it was given to him or taken by force. Jennie Wilk's evidence is corroborated as to what occurred. There is no evidence that she told him, or that he knew, how much money she had. His testimony as to her statement when the men were leaving, together with the evidence that telephone connections were broken and the complaining witness was told not to call the police, tended strongly to corroborate the testimony of the People's witnesses.

We are of the opinion that the jury were justified in finding that the facts in this case showed robbery and that it was not an honest attempt on plaintiff in error's part to collect a debt. That question was one of fact for the jury, who heard and saw the witnesses. This court has often stated that it will not reverse a judgment on a question of the weight of the evidence unless it appears from the record that there is reasonable doubt as to defendant's guilt.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*